## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | |
|---|---|
| **MOULIN ROUGE S.A.**<br>rue Royale, 97<br>1000 Bruxelles<br>Brussels, Belgium<br><br>Plaintiff,<br><br>v.<br><br>**MOULIN ROUGE CATERERS, INC.**<br>80-A Bureau Drive<br>Gaithersburg, MD 20878<br><br>Serve On:<br>    Mohammad Taghi Yahyavi<br>    7509 Mill Run Drive<br>    Derwood, Maryland 20855<br><br>and<br><br>**MOHAMMAD TAGHI YAHYAVI**<br>7509 Mill Run Drive<br>Derwood, Maryland 20855<br><br>Defendants. | Civil Action No.: _____ |

### COMPLAINT FOR TRADEMARK INFRINGEMENT AND DILUTION

Moulin Rouge S.A. ("Moulin Rouge" or "Plaintiff"), by and through its undersigned counsel, sues Moulin Rouge Caterers, Inc. ("Moulin Rouge Caterers" or "MRC") and MRC's President, Mohammad Taghi Yahyavi ("Yahyavi") (together, MRC and Yahyavi are referred to collectively as "Defendants"), and alleges as follows:

## NATURE OF THE CASE

1.      This is a Civil Action under the federal Lanham Act for trademark dilution, trademark infringement and unfair competition against MRC, a food catering business in Montgomery County, Maryland that does business as "Moulin Rouge Caterers", and MRC's President, Yahyavi.

2.      Plaintiff, Moulin Rouge, is a Belgian corporation that owns the famous French trademark MOULIN ROUGE (which, in English, means "red windmill"), which has been in use in France continuously since 1889, when the famous Parisian cabaret first opened.  Plaintiff also has multiple United States trademark registrations for the mark, MOULIN ROUGE, covering various international classes, including live musical stage shows and theater productions.

3.      The trademark MOULIN ROUGE is famous and recognized throughout the world, including the United States.

4.      Plaintiff has expended enormous resources and effort in acquiring, and in protecting and enforcing, its trademark rights against others who wrongfully and without right attempt to profit from the fame and goodwill associated with the MOULIN ROUGE mark. The Defendant, Moulin Rouge Caterers, and its president, Yahyavi, are wrongfully trading on the fame of Plaintiff's mark, MOULIN ROUGE.

5.      The Defendants are infringing and diluting the Plaintiffs' famous MOULIN ROUGE mark by using the mark to identify its catering services, which have nothing to do with the Plaintiff. The Defendants advertise on the internet at a website address that incorporates the Plaintiffs' mark: www.moulinrougecaterers.com.  Despite ample notice to Yahyavi that he and his catering business, MRC, are diluting and infringing Plaintiff's famous trademark and using the Plaintiff's mark in a

manner likely to cause public confusion, the Defendants have willfully and intentionally continued to use Plaintiff's mark.

6.      Defendants' use of the words MOULIN ROUGE to identify their products and services constitutes trademark dilution of the Plaintiff's famous mark under the Lanham Act, 15 U.S.C. §1125(c), trademark infringement under the Lanham Act, 15 U.S.C. § 1114, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).  Defendants' actions have caused, and will continue to cause, damage and injury to Plaintiff, Moulin Rouge, unless they are permanently enjoined from further use of the MOULIN ROUGE trademark.

### JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action pursuant to: 28 U.S.C. § 1331 because this action arises under the laws of the United States; 28 U.S.C. § 1338 because this action arises under trademark, unfair competition and dilution provisions of the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125.

8.      This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) because this is a civil action not founded solely on diversity of citizenship and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Maryland.  Furthermore, the Defendants are subject to personal jurisdiction in Maryland, as MRC is located in Gaithersburg, Maryland, and Yahyavi resides in this State.

### THE PARTIES

9.      Moulin Rouge is a Belgian corporation with its principal place of business in Paris, France.

10.    Upon information and belief, Defendant Moulin Rouge Caterers is a Maryland corporation with its principal place of business in Gaithersburg, Maryland.   MRC operates a catering business and advertises its products and services at its website, www.moulinrougecaterers.com.

11.    Upon information and belief, Defendant Yahyavi is the President, sole director and the sole shareholder of Moulin Rouge Caterers, and he also is a resident of Maryland.

## ALLEGATIONS OF FACT

12.    Moulin Rouge is the owner of numerous United States trademark registrations for the mark MOULIN ROUGE (hereinafter, the "Mark") in a variety of international classes, including U.S. registration Serial Numbers 2,667,568;  2,667,569;  and  2,852,285 (hereinafter, the "Mark Registrations").

13.    Plaintiff's first use in commerce of its MOULIN ROUGE Mark in the United States was at least as early as June 24, 1981, and Plaintiff has maintained continuous and uninterrupted use of the Mark since that date to identify in the U.S., among other things, live musical entertainment and theater productions associated with the famous cabaret in Paris, and merchandise that displays the Mark (including a brand of Moulin Rouge wine).

14.    Plaintiff also licensed its Mark to Twentieth Century Fox for the film, "Moulin Rouge," which premiered in the United States in 2001 and received two Academy Awards (it received eight nominations).  The 2001 film was a remake of a 1952 film also entitled "Moulin Rouge", which also received two Academy Awards.

15.    Plaintiff is the senior user of the Mark, both in the United States and worldwide.

- 4 -

16.     On information and belief, Defendants began using the Mark to identify a local catering business in Montgomery County, Maryland in or about 1987, and Defendant MRC registered its Internet domain, www.moulinrougecaterer.com on or about September 23, 2003.

17.     In a further attempt to evoke the Moulin Rouge cabaret, Defendants displayed old French advertisements of the Moulin Rouge cabaret on their web site, and the Defendants' website also uses a color scheme that is primarily red.

18.     Plaintiff was unaware of the Defendants' use of the Mark, including the use of the Mark in the Domain, until about October of 2006.

19.     In October of 2006, Plaintiff notified Defendants that the Defendants' use of the Mark was likely to cause confusion among members of the public, who would believe that the Defendants' business is somehow affiliated with or sponsored by the Plaintiff, the famous Parisian cabaret itself, and/or the Moulin Rouge film.  Plaintiff also notified Defendants that their use of the Mark was likely to cause dilution of the Plaintiff's famous Mark.

20.     The Defendants, upon receipt of the Plaintiff's demand to cease and desist all use of the MOULIN ROUGE Mark in connection with the Defendants' catering business and services, responded to the Plaintiff's demands and negotiations between the Plaintiff and Defendants commenced.

21.     Defendants, however, eventually refused to cease and desist using the Mark, and continue to willfully and intentionally use the Mark in commerce.

22.     Defendant Yahyavi has personally directed Defendant MRC's tortious conduct, and at all times relevant hereto, has been aware of MRC's tortious conduct in his capacity as a company officer, director and shareholder.

## COUNT I: TRADEMARK DILUTION (BLURRING)

23.     Moulin Rouge repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 22 above as if fully set forth herein.

24.     Plaintiff is the owner of the trademark, MOULIN ROUGE, which is famous because of, among other reasons, the substantial duration, extent, and geographic reach of advertising and publicity of the Mark, whether advertised or publicized by the Plaintiff or third parties; the substantial amount, volume, and geographic extent of sales of goods or services offered under the Mark; the extent of actual recognition of the Mark throughout the United States; and because it is registered on the principal register.

25.     Defendants MRC and Yahyavi commenced use of Plaintiff's Mark, MOULIN ROUGE, in commerce and for commercial purposes after that Mark had become famous.

26.     The Defendants' use of the Mark is likely to cause dilution by blurring the famous Mark, because Defendants' use impairs the distinctiveness of Plaintiff's famous mark.

WHEREFORE, Plaintiff requests that the Court grant an injunction pursuant to 15 U.S.C. § 1116 upon such terms as the Court may deem reasonable to prevent any further dilution of the Plaintiff's Mark, including:

> A.      An Order permanently enjoining Defendant MRC, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with it who receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE to identify or describe, in whole or in part, its business or in connection with the identification, sale, offering for sale, distribution, and/or advertising of any of its goods and services;

B.    An Order permanently enjoining Defendant Yahyavi, including any of his agents, employees, attorneys and those in active concert or participation with him who receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE to identify or describe his business, in whole or in part, or in connection with the identification, sale, offering for sale, distribution, and/or advertising of any of his goods and services;

C.    An Order directing Defendants to deliver to Plaintiff for immediate destruction or itself certify actual destruction of all documents that contain, in whole or in part, the words "MOULIN ROUGE" in any manner or form used or intended to be used by Defendants in connection with any business, or in connection with the sale or license, offering for sale or license, distribution, or advertising of goods and services offered by the Defendants;

D.    An Order directing Defendants to file with the Court and serve on the Plaintiff within thirty days after the service on the Defendants of such injunction (or such extended period as the Court may direct) a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the injunction; and

E.    Such other and further relief as the Court deems proper and just.

### COUNT II: TRADEMARK INFRINGEMENT (LANHAM ACT)

27.    Moulin Rouge repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 26 above as if fully set forth herein.

28.     Defendants have, without the consent of the registrant Moulin Rouge, used in commerce a reproduction, copy or colorable imitation of Moulin Rouge's Mark in connection with the identification, sale, offering for sale, distribution, and/or advertising of goods and services in a manner that is likely to cause confusion, or to cause mistake, or to deceive consumers thereof.

29.     Defendants' actions constitute an infringement of one or more of the Plaintiff's Mark Registrations, pursuant to 15 U.S.C. § 1114.

30.     Defendants' infringement of the Mark Registrations has caused and will continue to cause harm to the Plaintiff, including irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Plaintiff requests the following:

A.     An Order permanently enjoining Defendant MRC, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with it who receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE, in whole or in part, to identify or describe its business or in connection with the identification, sale, offering for sale, distribution, and/or advertising of any of its goods and services;

B.     An Order permanently enjoining Defendant Yahyavi, including any of his agents, employees, attorney and those in active concert or participation with him who receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE, in whole or in part, to identify or describe his business or in connection with the identification, sale, offering for sale, distribution, and/or advertising of any of his goods and services;

C.    An Order directing Defendants to deliver to Plaintiff for immediate destruction or itself certify actual destruction of all documents that contain, in whole or in part, the words "MOULIN ROUGE" in any manner or form used or intended to be used by Defendants in connection with their business, or in connection with the sale or license, offering for sale or license, distribution, or advertising of goods and services offered by the Defendants;

D.    An Order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants bearing the words "MOULIN ROUGE", or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed pursuant to 15 U.S.C. § 1118;

E.    An Order directing Defendants to file with the Court and serve on the Plaintiff within thirty days after the service on the Defendants of such injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the injunction;

F.    An Order that Defendants pay Plaintiff damages in an amount to be proven at trial, including but not limited to: (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of this Action pursuant to 15 U.S.C. § 1117(a); and

G.   Such other and further relief as the Court deems proper and just, including a sum exceeding three times the amount of the Plaintiff's actual damages, pursuant to 15 U.S.C. § 1117(a).

## COUNT III: UNFAIR COMPETITION (LANHAM ACT)

31.   Moulin Rouge repeats and incorporates by reference all of the allegations set forth in paragraphs 1 through 30 above as if fully set forth herein.

32.   Defendants have, on or in connection with goods and services, used in commerce the Plaintiff's Mark, MOULIN ROUGE, in a manner that is likely to cause confusion, or to cause mistake, or to deceive the relevant consuming public as to the affiliation, connection, or association of Defendants with Plaintiff, or in a manner that suggests that the origin of Defendants' goods and services is with the Plaintiff, or that Plaintiff has sponsored or approved of Defendants' goods, services or commercial activities.

33.   Plaintiff's use of the Mark predates the Defendants' use of the Mark, and Plaintiffs have priority of right over Defendants to use the Mark.

34.   Plaintiff's Mark is distinctive as to the source of the good or services of the Plaintiff.

35.   Plaintiff is, or is likely to be, damaged by the Defendants' use of the Mark, MOULIN ROUGE.

36.   Defendants' use of the Mark MOULIN ROUGE, therefore, violates of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

WHEREFORE, Plaintiff requests the following:

A.   An Order permanently enjoining Defendant MRC, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with it who

receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE, in whole or in part, to identify or describe its business or in connection with the sale or license, offering for sale or license, distribution, or advertising of its goods and services ;

B.  An Order permanently enjoining Defendant Yahyavi, including any of his agents, employees, attorney and those in active concert or participation with him who receive actual notice of the Court's Order by personal service or otherwise, from using the mark MOULIN ROUGE, in whole or in part, to identify or describe his business or in connection with the sale or license, offering for sale or license, distribution, or advertising of his goods and services;

C.  An Order directing Defendants to deliver to Plaintiff for immediate destruction or itself certify actual destruction of all documents that contain, in whole or in part, the words "MOULIN ROUGE" in any manner or form used or intended to be used by Defendants in connection with their business, or in connection with the sale or license, offering for sale or license, distribution, or advertising of goods and services offered by the Defendants;

D.  An Order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the Defendants bearing the words "MOULIN ROUGE", or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed pursuant to 15 U.S.C. § 1118;

E.   An Order directing Defendants to file with the Court and serve on the Plaintiff within thirty days after the service on the Defendants of such injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which the Defendants have complied with the injunction;

F.   An Order that Defendants pay Plaintiff damages in an amount to be proven at trial, including but not limited to: (1) Defendants' profits, (2) any damages sustained by Plaintiff, and (3) the costs of this Action pursuant to 15 U.S.C. § 1117(a); and

G.   Such other and further relief as the Court deems proper and just, including a sum exceeding three times the amount of the Plaintiff's actual damages, pursuant to 15 U.S.C. § 1117(a).

## PRAYER FOR JURY TRIAL

Plaintiff respectfully prays a trial by jury on all issues so triable.

Respectfully submitted,

Dated: September 17, 2007

Robert R. Bowie, Jr. (#00442)
Joshua A. Glikin (#26852)
BOWIE & JENSEN, LLC
29 W. Susquehanna Avenue,
Suite 600
Towson, Maryland  21204
(410) 583-2400

*Counsel for Plaintiff, Moulin Rouge S.A.*

- 12 -